JEROME EDDY v. ARTHUR C. McCALL, SHERIFF OF GENESEE COUNTY.

*Chattel mortgages—After-acquired property—Husband and wife— Evidence.*

1. The testimony of a wife as to matters of which she has no knowledge except as informed by her husband is incompetent.
2. In this case, after the purchase by a husband of a saw-mill plant and other property, and the execution by him of a real-estate mortgage to secure the purchase price, his wife joined with him

17 MICH—32

in a chattel mortgage, as collateral security for a portion of the same debt, upon the lumber and other stock, worked and unworked, in the lumber-yard carried on in connection with said mill, which business was operated in the wife's name, but managed by the husband, up to a certain date, when she transferred whatever interest she had to her husband, after which the mortgage was duly renewed. A creditor, who had sold lumber to the husband *after* such renewal, attached the lumber in the yard which had been purchased *since* the transfer by the wife, claiming that *prior* to that time she was the sole owner of the business, and that the execution of the chattel mortgage by the husband was formal, while the mortgagee claimed the *reverse* to be true, and sued the sheriff in trover for the attached property, claiming to hold the same under a clause in the chattel mortgage extending its lien to all lumber, stock, or material of every kind which the mortgagors might add to said business, which business was fully identified and located, and was the same hereinbefore referred to. The circuit judge instructed the jury that said clause was valid as between the parties, but, as to lumber purchased by the husband after the transfer to him by his wife, it gave the mortgagee no superior rights to the attaching creditor, if they found that prior to such transfer the business and property belonged to her, of which fact the mortgagee had knowledge.

The jury found a verdict for the defendant, and in reversing the judgment the Court hold that it was immaterial what financial relations existed between the mortgagors; that, if the wife's signature was merely formal, it was of no consequence, and, if she had any interest in the business or mortgaged property, it was immaterial, as both executed the mortgage, and so long as it was unpaid, and they carried on the business, it made no difference to plaintiff in what name it was conducted; that the clause was valid and effectual as between the parties, and where such an agreement is written into the mortgage plain and specific, and there is no question but that the property sought to be held is within the description given, there is no reason why it should not be valid as to third persons.

Error to Genesee.    (Newton, J.)    Argued May 2, 1888. Decided October 12, 1888.

Trover.    Plaintiff brings error.    Reversed.    The facts are stated in the opinion, and are summarized in head-note 2.

*Baldwin & Eddy,* for appellant, contended as stated in the opinion.

*Edget, Brooks & Conway,* for defendant, contended for the rule laid down in the charge.

SHERWOOD, C. J.   This action was trover to recover for a quantity of lumber alleged to be of the value of $1,500, and situated, at the time of the claimed conversion, in the Third ward in the city of Flint.   The declaration is in the usual form, containing one count, and alleging damages in the sum of $2,000.   The plea is the general issue, with notice that on the trial the defendant will show that, on May 27, 1886, J. L. Littlefield commenced a suit against Samuel J. Lewis, of the city of Flint, and that said property was seized upon the writ as the property of said Lewis ; that judgment was subsequently obtained by the plaintiff in said suit for the sum of $1,200.61, and under the execution issued thereon the property was sold, and proceeds disposed of as directed by said execution ; that the defendant, as sheriff of said county, had the right to do what he did in the premises ; and will further show that plaintiff had no interest in, or lien upon, said goods, at the time defendant took them, nor any possession thereof.

That the mortgage executed by said Lewis and his wife, under which the plaintiff claims, was void, as against the execution levy, because it was given for a larger sum by $5,000 than was actually owing from the mortgagor to the mortgagee, and with the fraudulent intent of both to prevent other creditors from making levies thereon, and to hinder and delay them in the collection of their debts; and will further show that the mortgage was not kept properly renewed within a year from the time of filing the same, and the lien as against creditors did not, therefore, continue ; also that the property levied upon was acquired by Lewis after the mortgage was made, and was never subject thereto.

Such was the issue presented by the pleadings. A trial was had in the Genesee circuit, by jury, before Judge Newton, and judgment was given for defendant.

The plaintiff brings error.

But one assignment of error relates to the taking of the testimony. The deposition of Sarah A. Lewis was taken, and, when offered in evidence, was objected to on the ground that the interrogatories called for incompetent testimony; the witness does not state facts within her knowledge, but her testimony contained in the deposition is hearsay, derived from information obtained from her husband, except as to a portion of the fifth and sixth interrogatories.

The court ruled :

"I think I shall have to receive the testimony. There are some things she stated about what Arthur Eddy said, in regard to transferring the property back to Jerome Eddy, that I think should be left out."

Counsel for plaintiff excepted, and the deposition was then read in evidence, except certain portions, which the judge had ruled were improper.

The testimony shows that on August 1, 1884, the plaintiff sold to said Samuel J. Lewis the mill plant and property, including the land on which the same was situated, in Flint, for $9,000. Lewis paid $800 down, and gave a mortgage on all the property, which was real estate, to secure the payment of the balance, $8,200, payable in 16 semi-annual payments, the last of which would fall due in 1893. The testimony further shows that the said Samuel J. Lewis and Sarah A. Lewis, his wife, on February 13, 1885, executed to the plaintiff a chattel mortgage as collateral security for the payment of $5,000 of the amount secured by the real-estate mortgage, and $998.28 secured by three notes which Lewis had given, and which were

indorsed by the plaintiff, at the bank. The property mortgaged is described as follows:

"The following goods, chattels, and personal property, to wit: One span gray horses, about eight years old; one bay horse; one double harness; one single harness; one two-seated carriage (canopy top); two heavy wagons; one single wagon; one Fay double surfacer and matcher; one Fay seesaw and frame; one No. 6 Detroit safe; also- all the lumber, worked and unworked, bill stuff, timber, rough lumber, lath, shingles, cedar posts, doors, window-sash, moulding, and other like material, now in mill, sheds, buildings, and yard, occupied by parties of the first part, north of Kearsley street, and west of Smith-street bridge, in Third ward of city of Flint; and also all such other lumber, stock, or material of every kind which they may hereafter add to said business, and all other property which they may hereafter purchase and use in connection with said business; which said above-described goods, chattels, and property, at the date hereof, are situated at the Third ward in the city of Flint, Genesee county, Michigan, and are free and clear from all liens, convey-ances, incumbrances, and levies, except mortgage to C. M. Hill & Co., of E. Saginaw, on lumber, shingles, lath, cedar posts, sash, and doors, in the sum of 2,042 14-100 dollars."

It will be noticed that this chattel mortgage was dated February 13, 1885, and was filed the day after. It was renewed by the plaintiff, by filing the proper affidavit, on February 1, 1886, and it is under this mortgage that the plaintiff makes his claim to the property.

The other creditor, under whose judgment and execu-tion the defendant seeks to defend, it will be noticed, claims under an attachment levy made May 28, 1886, and the contest is between these two creditors and these two claims.

It is claimed by the defendant that Mrs. Lewis had an interest in the lumber-yard connected with the mill busi-ness, and that until January 1, 1886, while the business was conducted entirely at the yard by Mr. Lewis, he was only acting as agent of his wife; but the plaintiff claims

that the business was Mr. Lewis', and, although he might have at times acted in doing it as agent for Mrs. Lewis, it was in fact his, and he had the only interest therein, and that when the chattel mortgage was given it was for his own debt and upon his own property, and that all after acquired was his; that on January 1, 1886, Mrs. Lewis transferred to her husband whatever interest she held in the mortgaged property.

Of course, in regard to the exception we are considering, it may well be said that testimony giving the circumstances surrounding and accompanying the transactions above stated might properly be given in evidence; and, so far as the deposition objected to does this, the objection ought not to be allowed to prevail. It is a little difficult from the record to ascertain the course pursued. We think, however, that so much of the deposition of Mrs. Lewis as was read, relating to the negotiations between Mr. Eddy and her husband, of which she knew nothing only as informed by the latter, should not have been received.

The principal question involved, and the only one we deem it necessary to discuss in the further consideration of the case, is, was the clause contained in the chattel mortgage, wherein it described the property mortgaged, and in which it says,—

"And also all such other lumber, stock, or material of every kind which they may hereafter add to said business, and all other property which they may hereafter purchase and use in connection with said business,"—

Of force and effect as to defendant? Such property was to be included in the mortgage. There is no question as to what business was referred to. It was the lumber business in the city of Flint, which included the running of a saw-mill in the manufacture of lumber, and the purchasing and selling of lumber at their lumber-yard.

It was immaterial what financial relations this husband and wife, carrying on this business, sustained to each other. If her signature was merely formal to the mortgage, it then was of no consequence. If she had any interest in the business or property mortgaged, it was immaterial, as the mortgage was made by both; and so long as the mortgage was unpaid, and they carried on the business, it made no difference to the plaintiff in what name it was conducted. The clause was valid and effectual between the parties; and where the agreement is written into the mortgage plain and specific, and there is no question but that the property sought to be held is within the description given, I can see no reason why the clause should not be held valid as to third persons,—*Gay v. Bidwell,* 7 Mich. 525; *People v. Bristol,* 35 Id. 29; *Caldwell v. Pray,* 41 Id. 307; *Cigar Co. v. Foster,* 36 Id. 368; *Curtis v. Wilcox,* 49 Id. 425 (13 N. W. Rep. 803); *Phillips v. Both,* 58 Iowa, 499 (12 N. W. Rep. 481); *Leland v. Collver,* 34 Mich. 418; Jones, Chat. Mortg. 347,—and the circuit judge erred in holding otherwise in his charge.[1]

There is no hardship to a creditor in adopting this rule

---

[1] The court, after instructing the jury that as between the parties to the mortgage the clause covering after-acquired stock was valid, further charged them as follows:

"If you come to the conclusion from the evidence that the business of lumber dealing was carried on by Mrs. Lewis at the time the mortgage was given, with plaintiff's knowledge, who took his mortgage from her recognizing her as the owner of such property, and that the signing of the same by the husband was known by plaintiff to be only formal, who also knew that the husband was not interested in the ownership of the business, said mortgage would cover all property in the yard January 1, 1886, and which had been acquired by Mrs. Lewis before the execution of the mortgage up to that date. But as to property acquired *after* Samuel J. Lewis became the owner of the property and the business, January 1, 1886, unless you find that, prior to defendant's attachment, Samuel J. Lewis had turned out the lumber acquired by him to the plaintiff under his mortgage claim, and that plaintiff had taken possession thereof under said mortgage, and by agreement with or the assent of Samuel J. Lewis, plaintiff would have no superior right or claim as to such lumber over the attaching creditor."

of law. The record informs him at all times of the situation of the debtor's property; and that which the mortgage covers is always tangible, and open to the observation of all persons with whom the debtor may have dealings; and when any person sells to such a debtor or mortgagor he is fully advised of the fact that the property he parts with may at once become subject to the lien of another, whose claim is to be satisfied from such property before his claim can reach it. And so long as he is advised of this fact from the beginning he cannot say he has been misled to his injury, or be allowed to urge that such lien is a fraud upon his rights.

We think the judgment, for the errors herein stated, should be reversed, and a new trial granted.

CHAMPLIN and MORSE, JJ., concurred. CAMPBELL and LONG, JJ., did not sit.