## BARLOW v. SOLDOFSKY.

No. 10365—Opinion Filed Dec. 20, 1921.

(Syllabus.)

1. **Indians—Lands of Minors—Jurisdiction of Probate Court—Construction of Statute.**

Section 6 of the act of Congress of May 27, 1908 (35 Stat. 312, c. 199), providing that the persons and property of minor allottees of the Five Civilized Tribes be subject to the jurisdiction of the probate courts of the state of Oklahoma, was intended to confer upon such courts jurisdiction of the property of minor allottees, in so far as the property was acquired by said minors as members of the Five Civilized Tribes. No other lands belonging to said minors, other than lands allotted to them, or lands of deceased allottees going to such minors by inheritance, were intended to be covered by the act.

2. **Same — Right of Minor to Convey Land Received by Purchase.**

Caroline Barlow, an unrestricted member of the Creek Tribe of Indians, conveyed by warranty deed to Elijah Bruner, her minor son, a certain portion of her allotted lands. Thereafter Elijah, then being 19 years of age, conveyed said land to the plaintiff. Held, that, by reason of the conveyance by Caroline Barlow, Elijah Bruner received the land, not as an allottee, nor as a member of the Five Civilized Tribes, but by purchase; and his right thereafter to convey would be governed by the same law applying to other minors over 18 years of age, regardless of whether or not they were members of the Five Civilized Tribes.

Error from District Court, Wagoner County; Chas. G. Watts, Judge.

Action by Celia Soldofsky against Caroline Barlow for possession of land; cross-petition by defendant to cancel deeds. Judgment for plaintiff, and defendant brings error. Affirmed.

W. T. Hunt, for plaintiff in error.

Jess W. Watts, Thos. H. Owen, and Alvin F. Molony, for defendant in error.

PITCHFORD, V. C. J. This action was instituted by the defendant in error in the district court of Wagoner county, Okla., against the plaintiff in error for possession of certain land and to quiet title, with cross-petition by plaintiff in error asking for cancellation of certain deeds. Hereafter, for convenience, defendant in error will be designated as plaintiff, and plaintiff in error will be designated as defendant. A jury was waived and the cause submitted to the court upon the following stipulation:

"It is agreed and stipulated by the plaintiff and defendant to this action that the land in controversy herein was part of the allotment of Caroline Barlow, nee Bruner, the defendant; that on the 13th day of November, 1911, said Caroline Barlow conveyed said land by warranty deed to Elijah Bruner, her son; that on the 30th day of January, 1914, said Elijah Bruner executed a warranty deed to said land to W. A. Stetler; that on the 23rd day of February, 1914, said W. A. Stetler executed a quitclaim deed to said land to the plaintiff, Celia Soldofsky; that on the 23rd day of February, 1914, Elijah Bruner executed a general warranty deed to said land to the plaintiff, Celia Soldofsky; that said Celia Soldofsky paid to said Elijah Bruner for said deed the sum of $200; and she paid to said W. A. Stetler for quitclaim of his title the sum of $57; and further, that when said Elijah Bruner executed all of said conveyances he was a minor, and was in fact 19 years of age, though full grown in stature, and that at the time he executed said deed to Celia Soldofsky he stated to her he was 24 years of age and she believed and relied upon said statement. It is further agreed that said Elijah Bruner thereafter died on or about the 17th day of June, 1914, leaving the defendant, Caroline Barlow, as his sole and only next kin and heir at law. It is further agreed that at the time of these conveyances that the defendant, Caroline Barlow, and Elijah Bruner, her son, were living upon the land in controversy, and that the said Caroline Barlow has at all times since his death and is now in possession of said land. It is further agreed by the parties that after the execution of said deeds to Celia Soldofsky, she paid the sum of $45 as taxes on said land. It is further agreed that neither said Elijah Bruner, during his lifetime, nor Caroline Bruner, after his death, by any positive act disaffirmed said deeds made by Elijah Bruner, further than

by remaining in possession of said land, nor have they ever tendered to said Celia Soldofsky the amount she paid to said Elijah Bruner, as the purchase price thereof, nor the amount of taxes on said land."

Judgment was rendered in favor of the plaintiff, from which the defendant appeals. The contention of the defendant is that, Elijah Bruner being a Creek freedman, and a minor on the date of the deeds executed by him, the same were void, and had he lived and brought action to cancel the deeds, he would not have been required to pay or tender back the money or any part thereof received by him as consideration for executing the deeds. To sustain this contention, defendant relies on section 6 of the act of Congress of May 27, 1908 (35 Stat. 312, c. 199), which provides:

"That the persons and property of minor allottees of the Five Civilized Tribes, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

Had the land in controversy been a portion of the allotment of Elijah Bruner, then there would be no question as to the right of the defendant to have the deed made to plaintiff canceled, as the same would have been absolutely void. Under the law, a minor allottee could not alienate any portion of his allotment prior to reaching his majority. By the above act, Congress intended to confer upon the probate courts of the state full jurisdiction of the persons and property of minor allottees. No other lands belonging to minor members of the Five Civilized Tribes, other than lands allotted to the minors, and lands of deceased allottees going to such minors by inheritance, were intended to be covered by the act. Caroline Barlow was under no restriction as regarded her allotment; she was clothed with full power to convey this land, the same as any other land owned by her. And by reason of her conveyance Elijah received the land, not as an allottee, nor as a minor of the Five Civilized Tribes, but by purchase, the same as any other purchaser. It therefore follows that his authority to convey would be governed by the same law applying to other minors, regardless of whether or not they were members of the Civilized Tribes.

In the case of McKinney v. Bluford, 81 Okla. 166, 197 Pac. 430, Mahale, a full-blood Creek Indian, executed a will devising her allotment to Bluford, also a full-blood Creek Indian, who was in no way related to Mahale, either as heir or otherwise. After the death of Mahale, Bluford sold the land

so devised to McKinney. It was there contended that the deed executed by Bluford to McKinney was of no effect, because the same had not been approved by the proper county judge. This court held that it was not necessary that the deed of Bluford should be so approved, for the reason that he took the land by devise and not as an heir of the deceased, and that the same law applied to him as to such land as would apply to any other citizen of Oklahoma; that while he was restricted as to the disposition of his allotted lands, he was free of any restriction in so far as the land therein involved was concerned.

It does not appear that the consideration paid by Elijah for the land was trust money derived from his allotment, therefore it follows that his right to convey was controlled by the statutes of this state relating to conveyance of land by male minors over the age of 18 years. We are therefore of the opinion that section 6 of the 1908 act has no application to lands of a minor citizen of the Five Civilized Tribes of Indians where the title was acquired as in the instant case. Thus, in Cochran v. Teehee, 40 Okla. 392, 138 Pac. 563, this court said:

"Necessarily no question arising under the act relates to any property acquired by the allottees otherwise than by and through the allotment of the lands belonging to the tribe, because the act does not purport to deal with any property except that."

In Kirkpatrick v. Burgess, 29 Okla. 121, 116 Pac. 764, the court said:

"Under the statutes of the state, as we have noted above, the mere marriage of the minor, except as to allotted lands, qualifies him to sell his land; hence the necessity of any supervision on the part of the probate court or of any guardian does not exist."

In the recent case of Armstrong v. Phillips et al., 82 Okla. 82, 198 Pac. 499, this court said:

"We find, and so hold, that the land in controversy not being the plaintiff's allotment nor purchased with Indian trust funds, her status as to her power to alienate the same was the same as though she was not of Indian blood, and that the act of May 27, 1908, supra, has no application."

Section 879, Rev. Laws of Oklahoma 1910, defines minors as male persons under 21 years of age, and females under 18 years of age. Section 883, Id., provides as follows:

"A minor cannot give a delegation of power nor under the age of eighteen, make a contract relating to real property, or any interest therein, or relating to any personal property not in his immediate possession or control, except as otherwise specially provided."

Section 885, Id., provides as follows:

"In all cases other than those specified herein, the contract of a minor, if made while he is under the age of 18, may be disaffirmed by the minor himself, either before his majority or within one year's time afterwards; or in case of his death within that period, by his heirs or personal representatives; and if the contract be made by the minor while he is over the age of 18, it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received or paying its equivalent with interest."

There is no ambiguity in the foregoing statute. The time within which to disaffirm a contract, made while such minor was over the age of 18 years, is one year after the minor attains the age of majority; or, in case of his death within that period, by his heirs or personal representative; the act requires the restoration of the consideration to the party from whom it was received, or the payment of its equivalent with interest as a condition precedent to the right to disaffirm.

In the instant case there was no disaffirmance on the part of the minor, nor by his heirs or personal representatives until more than four years had elapsed from date of the deed to the plaintiff, and two years after the majority of Elijah; no offer to restore the consideration was ever made; no excuse was offered for the failure to offer or to restore. When Elijah executed the deed to plaintiff, while in fact he was but 19 years of age, he was full grown in stature, and at the time he stated to the plaintiff he was 24 years of age, and it appeared from the agreed statement of facts that she believed and relied upon said statement. The fact that Elijah and defendant remained in possession after the execution of the deed to plaintiff did not affect the rights of plaintiff under the facts.

In Wolverine Oil Co. v. Parks et al., 79 Okla. 318, 193 Pac. 624, the second paragraph of the syllabus reads as follows:

"Where the grantor continues in possession of premises after the execution and delivery of a deed, his possession will not be deemed adverse as to his grantee and those deriving title from him. Such possession will be deemed that either of the tenant or trustee of the grantee, and nothing short of an explicit disclaimer of such a relation and a notorious assertion of right in himself will be sufficient to change the character of his possession, and render champertous a conveyance by his grantee to a third party."

There is nothing indicating that Elijah, during his lifetime, disputed the title of the plaintiff; nor did the defendant, his sole heir at law, dispute the plaintiff's title prior to the filing of this action. For the reason stated, we conclude that the judgment of the court below should be affirmed, and it is so ordered.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.